IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | | |
|---|---|---|
| LINDA S. ELAM and FREDERICK J. ELAM, in his individual capacity and his capacity as Trustee for the L AND F IRREVOCABLE TRUST, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 17-cv-02188-SHL-tmp |
| AURORA COMMERCIAL CORPORATION; AURORA LOAN SERVICES, LLC; FIRSTBANK; HSBC BANK U.S.A.; LEHMAN BROTHERS HOLDINGS INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; NATIONSTAR MORTGAGE, LLC; and REALTY MORTGAGE CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

---

REPORT AND RECOMMENDATION

---

Before the court by order of reference are motions to dismiss filed by the defendants and a motion to amend the complaint filed by the plaintiffs. Specifically, defendant FirstBank filed a motion to dismiss on June 7, 2017. (ECF Nos. 13, 14, 31, 32.) Plaintiffs Linda Elam and Frederick Elam filed a response in opposition on June 16, 2017. (ECF No. 29.) Defendants Aurora Commercial Corporation, Aurora Loan Services, LLC, Mortgage Electronic Registration Systems, Inc., and

Nationstar Mortgage, LLC (collectively "Aurora") filed a motion
to dismiss on August 18, 2017.  (ECF Nos. 52-55.)  The Elams
filed a response in opposition and a motion to amend the
complaint on October 10, 2017.  (ECF Nos. 73, 74.)  On October
24, 2017, Aurora filed a response opposing the motion to amend
and providing further support for its motion to dismiss, and
FirstBank filed a motion to join this response.  (ECF Nos. 78,
79.)  On November 8, 2017, defendant HSBC Bank U.S.A. ("HSBC")
filed a motion to join Aurora's motion to dismiss and response
opposing the motion to amend.  (ECF No. 84.)

     For the following reasons, it is recommended that the
motion to amend the complaint be denied, the motions to dismiss
be granted, and the case be dismissed.

## I.   PROPOSED FINDINGS OF FACT

     The events giving rise to the instant complaint began on
December 2, 2002, when Linda Elam obtained a warranty deed for
real property located at 50 Brierwood Circle, Piperton,
Tennessee 38017 ("Brierwood property").  (Warranty Deed, ECF No.
54-1.)[1]  On December 12, 2002, Linda Elam and her husband,

---

[1]This deed and the other documents accompanying Aurora's and
FirstBank's motions to dismiss upon which the court relies are
"referred to in the . . . complaint and are central to the . . .
claim[s]."  U.S. ex rel. Sheldon v. Kettering Health Network,
816 F.3d 399, 405 n.2 (6th Cir. 2016) (quoting Seaton v.
TripAdvisor LLC, 728 F.3d 592, 596 (6th Cir. 2013)).
Consequently, the documents are among those the court may

Fredrick Elam, created the L and F Irrevocable Trust ("Trust")
and designated Frederick Elam as trustee. (Trust Agreement, ECF
No. 1-2; Certificate of Trust, ECF No. 54-2.) The next day,
Linda Elam executed a quitclaim deed conveying all of her
interest in the Brierwood property to the Trust. (ECF No. 54-
3.) On March 9, 2004, FirstBank prepared a Truth-in-Lending
disclosure statement for the Elams, which they signed on March
10, 2004. (ECF No. 1-6.) The statement indicated that the
Elams were providing FirstBank with a security interest in the
Brierwood property in return for a $637,500 loan and that they
would repay the loan in 359 payments of $1,925.79 and one
payment of $639,425.78. (Id.) The exhibit contains handwriting
of unknown origin suggesting that the Truth-in-Lending statement
was "from Aurora." (Id.)

On March 31, 2004, the Elams borrowed $540,000 from Realty
Mortgage Corporation and, in return, provided Realty Mortgage
with a security interest in the Brierwood property. (Deed of
Trust, ECF No. 54-4 at 1.) The note required the Elams to make
monthly payments starting at $2,656 a month, (id. at 22);
however, an Addendum to the Adjustable Rate Promissory Note
stated that the Elams' payments would start out at $1,912.50 a
month, (ECF No. 1-7.) A Truth-in-Lending disclosure statement

---

consider without converting the motions to dismiss into motions
for summary judgment. See id.

by Realty Mortgage also dated March 31, 2014, confirmed the payment requirements set out in the Addendum and stated that the Elams would first make 36 payments of $1,912.50, then 84 payments of $1,575.00, and lastly 240 payments of $3,131.79. (ECF No. 1-5.) Aurora Loan Services acted as the servicer for this loan until July 1, 2012, at which time Nationstar Mortgage became the servicer. (Mem. Supp. Defs.' Mot. Dismiss ("MSDMD"), ECF No. 55 at 3; Corporate Assignment of Deed of Trust, ECF No. 54-6.)

The Elams acquired a home equity line of credit for $148,500 from FirstBank on July 18, 2007. (Open-End Deed of Trust, ECF No. 14-1 at 1.) In consideration for the loan, the Elams provided FirstBank with an Open-End Deed of Trust for the Brierwood property. (Id.)

Purportedly because the Elams fell behind on their payments on the $540,000 mortgage loan, foreclosure proceedings were initiated on the property in or about October 2007, with Mortgage Electronic Registration Systems, Inc. ("MERS") acting as a substitute trustee. (MSDMD 3; App't Sub. Trustee, ECF 54-7 at 1.) On May 28, 2008, Aurora Loan Services sent a letter to the Elams informing them that, based on some prior discussions, they would have to make monthly payments of $3,835.71 on the $540,000 mortgage loan beginning June 1, 2008. (ECF No. 1-8.)

For reasons not clear from the record, FirstBank obtained a state court default judgment totaling $570,787.56 against Frederick Elam on June 20, 2008.[2] (FirstBank v. Logos, Inc., No. CT-001567-08 (Tenn. Cir. Ct. Jun. 20, 2008), ECF No. 14-4.) The Elams did not appeal this judgment. (Mem. Supp. FirstBank's Mot. Dismiss ("MSFBMD"), ECF No. 14 at 3.)

In or around February of 2009, the Elams again fell behind on their payments for the $540,000 mortgage, (MSDMD 3; Notice of Deficit, ECF No. 1-10), and as a result MERS attempted a second foreclosure, (App't Sub. Trustee, ECF No. 54-7 at 3.) On March 24, 2009, Aurora Loan Services sent the Elams a letter informing them that they had conditional approval for a Special Forbearance Agreement regarding their $540,000 mortgage and that an initial payment of $2,447.00 was due on March 31, 2009. (ECF No. 1-9.) The Elams did not make this initial payment. (ECF No. 1-10.) Aurora Loan Services then sent the Elams a letter on June 17, 2009, informing them that, due to their failure to maintain the prior repayment plan, they faced a deficit of $19,215.46. (Id.)

---

[2]"Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." Pram Nguyen ex rel. U.S. v. City of Cleveland, 534 F. App'x 445, 448 (6th Cir. 2013) (quoting Buck v. Thomas M. Cooley Law Sch., 597 F.3d 812, 816 (6th Cir. 2010)).

Frederick Elam filed for bankruptcy on July 15, 2009, November 12, 2009, June 4, 2010, and again on November 5, 2010. (Docket Bankr. Pets., ECF No. 54-8 at 1, 6, 14, 22.) The bankruptcy court granted one of the petitions and dismissed the other three. (Id.) While his second petition was pending, the Elams faced a third foreclosure attempt, this time brought by Aurora Loan Services in or around January of 2010. (App't Sub. Trustee, ECF No. 54-7 at 4.) Aurora asserts that the foreclosure attempt failed due to the pending bankruptcy petition. (MSDMD 4.) On February 13, 2012, the bankruptcy court discharged Linda Elam's debt pursuant to her filing for bankruptcy. (ECF No. 54-12.)

Aurora Loan Services sued the Elams in the Chancery Court of Fayette County on April 27, 2012, and asked the Chancery Court to declare either that the 2002 deed transferring title from Linda Elam to the trust was void or that Aurora Loan Services held the Brierwood property in a constructive trust. (Compl., Aurora Loan Services, LLC v. Elam, No. 15895 (Tenn. Ch. Ct. Apr. 27, 2012), ECF No. 14-2 at 11 to 14.) FirstBank, a defendant for notice purposes, filed a cross-claim in Chancery Court concerning the $148,500 home equity line of credit and sought the same remedies as Aurora Loan Services. (FirstBank's Answer & Cross-cl., Aurora Loan Services, LLC v. Elam, No. 15895 (Tenn. Ch. Ct. Jul. 31, 2012), ECF No. 14-5 at 5 to 7.) In

response to these claims, the Elams argued that only the Trust
held the rights to the Brierwood property. (Answer of Elams,
Aurora Loan Services, LLC v. Elam, No. 15895 (Tenn. Ch. Ct.
Sept. 19, 2012), ECF No. 14-6 at 2 to 4; see also ECF No. 14-3
at 2 to 3.) Soon thereafter, in or around August of 2012,
Nationstar unsuccessfully attempted to foreclose on the
Brierwood property. (App't Sub. Trustee, ECF No. 54-7 at 5;
MSDMD 4.)

    At some point before May 22, 2014, the Chancery Court - in
denying a motion by Nationstar for summary judgment - ruled that
the Trust could possess the Brierwood property and therefore the
2002 quitclaim deed was valid. (Compl. 1; Letter from Mark Grai
to the Elams (May 22, 2014), ECF No. 1-13 at 2.) Later, on May
8, 2015, the Chancery Court granted Nationstar's second motion
for summary judgment, finding that the "intent of the parties to
the transaction" creating the $540,000 mortgage "was that the
[Brierwood] property would be collateral for the loan."
(Nationstar Mortgage, LLC v. Elam, No. 15895 (Tenn. Ch. Ct. May
8, 2015), ECF No. 14-7 at 3 to 4.) As a result, the Chancery
Court held that the deed of trust that had accompanied the
mortgage should be "reformed to reflect that the interest of the
L & F Irrevocable Trust . . . was effectively conveyed in said
deed. . . ." Id. In addition, the Chancery Court held that
FirstBank's cross-complaint was "made moot" by the granting of

summary judgment. (Id. at 4.) Frederick Elam appealed this decision. (Notice of Appeal, ECF No. 54-16.) The Tennessee Court of Appeals dismissed his appeal on February 18, 2016. (ECF No. 14-8.) The Tennessee Supreme Court denied his petition to appeal on June 24, 2016. (ECF No. 14-9.) Nationstar initiated foreclosure again in or around February of 2017, and those proceedings remain pending. (App't Sub. Trustee, ECF No. 54-7 at 6 to 7; MSDMD 4.)

On March 16, 2017, the Elams filed a *pro se* complaint with this court.[3] (Compl., ECF No. 1.) They alleged that the two Truth-in-Lending disclosure statements violated the Truth in Lending Act ("TILA"). (Id. at 5.) They accused Aurora Loan Services, MERS, Nationstar, and HSBC of initiating or allowing illegal foreclosure proceedings that have slandered the title of the property. (Id.) They also alleged the judgment that FirstBank obtained against them was illegal because it was discharged in one of their bankruptcies and that FirstBank's mortgage has been rendered "moot" by the ruling of the Chancery Court. (Id.) The Elams sought $4,890,044 in damages and asked the Chancery Court to remove all mortgages and liens on the Brierwood property. (Id. at 6.)

---

[3]The Elams have since hired an attorney and are no longer proceeding *pro se*. (ECF No. 68.)

FirstBank argues for dismissal of the complaint on the basis of insufficient service of process, res judicata, the validity of the liens on the Brierwood property, and the Elams' failure to allege sufficient facts to support their claims. (MSFBMD 5–8; FirstBank's Joinder of Resp. Amend ("FirstBank's Joinder"), ECF No. 79 at 1.)  Aurora and HSBC argue that the court should dismiss the claims against them on the basis of res judicata and because the Truth-in-Lending claims are time barred.  (MSDMD at 9–12, 11 n.11; Mot. Join Defs.' Mot. Dismiss & Resp. Mot. Amend ("HSBC Joinder"), ECF No. 84.)

In addition to their responses in opposition to the motions to dismiss, the Elams have also filed a motion to amend their complaint. (ECF No. 74.)  The proposed amended complaint makes a few minor changes to the facts section; provides supplemental information clarifying the nature of the two alleged TILA violations; claims that the alleged TILA violations amount to fraudulent concealment; seeks to bring a Racketeer Influenced and Corrupt Organizations ("RICO") claim; and, in addition to the remedies in the original complaint, asks the court to order Aurora to revert to the original payment plan for the $540,000 mortgage loan and remove the second mortgage recorded by FirstBank. (Prop. Am. Compl., ECF No. 74-1 at 3 to 6, 7 to 10, 12.)  Aurora, FirstBank, and HSBC argue that the court should deny as futile the motion to amend, because all of the

violations are barred by res judicata and the applicable statutes of limitations. (Defs.' Resp. Pls.' Mot. Amend ("Aurora's Response"), ECF No. 78 at 4 to 5, 7; FirstBank's Joinder at 1; HSBC Joinder at 1.) Aurora and HSBC also contend that the proposed RICO claim is meritless because the Elams do not state any facts to support their allegations. (Aurora's Response at 6; HSBC Joinder at 1.)

## II.    PROPOSED CONCLUSIONS OF LAW

### A.    Standard of Review

Federal Rule of Civil Procedure 15(a)(2) directs courts to freely grant a party leave to amend its pleading "when justice so requires." A court may deny the motion to amend if such an amendment would be futile. Beydoun v. Sessions, 871 F.3d 459, 469 (6th Cir. 2017) (quoting Riverview Health Inst. LLC v. Med. Mut. of Ohio, 601 F.3d 505, 520 (6th Cir. 2010)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Id. (quoting Riverview Health, 601 F.3d at 520). The court will determine whether allowing the Elams to file the proposed amended complaint would be futile by considering both the defendants' responses to the motion to amend the complaint and their original motions to dismiss.

To avoid dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face." Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). Without factual allegations in support, mere legal conclusions are not entitled to the assumption of truth. Iqbal, 556 U.S. at 679. Although the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009), the court may also disregard "unwarranted factual inferences," Benzon v. Morgan Stanley Distributors, Inc., 420 F.3d 598, 608-09 (6th Cir. 2005) (quoting Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)).

**B.    TILA Claim**

The Elams allege that the Truth-in-Lending disclosure statements that they received violated the TILA requirements by failing to disclose material information relating to the number and amount of payments that the Elams would owe on the $540,000 mortgage. (Prop. Am. Compl. 7.) Aurora and HSBC argue that

these claims are barred by the doctrine of res judicata and the applicable statute of limitations.

1.   March 10, 2004 Disclosure Statement

As a preliminary matter, the court finds that the Elams have failed to assert a plausible TILA claim based upon the March 10, 2004 Truth-in-Lending disclosure statement because the document "contradicts allegations in the complaint to which it is attached." Creelgroup, Inc. v. NGS Am., Inc., 518 F. App'x 343, 347 (6th Cir. 2013) (quoting Williams v. CitiMortgage, Inc., 498 F. App'x 532, 536 (6th Cir. 2012); citing Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991)).   The Elams allege that this disclosure statement misrepresented to them that Aurora Loan Services would require 359 monthly payments of $1,925.70 rather than the $3,835.17 monthly payments that Aurora Loan Services later sought on the $540,000 mortgage loan.   (Prop. Am. Compl. 7; see also Compl. 3.)   However, the disclosure statement from March 10, 2004, appears to be completely unrelated to the $540,000 loan provided by Realty Mortgage.   FirstBank prepared this disclosure statement, not Realty Mortgage, and the disclosure statement relates to a $637,500 loan, not a $540,000 loan.   (Compare ECF No. 1-6, with ECF No. 1-5.)   Thus, the March 31, 2004 Truth-in-Lending disclosure statement prepared by Realty Mortgage is the

sole statement upon which the Elams can rely to bring their claim that Aurora and HSBC violated TILA.[4]

 2. <u>Res Judicata</u>

The court finds that the doctrine of res judicata bars the Elams from bringing their TILA claim. Res judicata deals with "the preclusive effect of a judgment." <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008). Pursuant to the full faith and credit statute, "records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken." 28 U.S.C. § 1738. Therefore, this court must look to Tennessee law to determine whether the Chancery Court case has a preclusive effect on the Elams' complaint in this court. <u>Basista Holdings, LLC v. Ellsworth Twp.</u>, No. 16-4112, 2017 WL 4534808, at *6 (6th Cir. Oct. 11, 2017) ("Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." (quoting <u>Abbott v. Michigan</u>, 474 F.3d 324, 330 (6th Cir. 2007))). As the Tennessee Supreme Court has explained,

---

[4]In any event, as discussed below, any TILA claim based on this March 10, 2004 disclosure statement would be barred by the statute of limitations.

The party asserting a defense predicated on res judicata must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.

Napolitano v. Bd. of Prof'l Responsibility, No. M2016-00869-SC-R3-BP, 2017 WL 2265593, at *11 (Tenn. May 24, 2017) (quoting Long v. Bd. of Prof'l Responsibility of Supreme Court, 435 S.W.3d 174, 183 (Tenn. 2014)).  It is clear that the underlying judgment was rendered by a court of competent jurisdiction, the same parties or their privies were involved in both suits, and the underlying judgment was final and on the merits.  Regarding the third element, the Elams argue that the claims that were raised, or could have been raised, in the Chancery Court case "rel[ied] on an entirely different factual predicate" from the claims raised in this case.  (Pls.' Mem. Opp'n Mot. Dismiss, ECF No. 73 at 3-4.)

In defining the concept of same claims or causes of action, the Tennessee Supreme Court and the Sixth Circuit have both adopted the approach of the Restatement (Second) of Judgments § 24 (1982) — likeness exists where both cases "arise out of the same transaction or a series of connected transactions." Creech v. Addington, 281 S.W.3d 363, 380-81 (Tenn. 2009) (citing Restatement (Second) of Judgments § 24 (1982)); J.Z.G. Res.,

Inc. v. Shelby Ins. Co., 84 F.3d 211, 215 (6th Cir. 1996)
(quoting Restatement (Second) of Judgments § 24 (1982)), cited
in Wheeler v. Dayton Police Dep't, 807 F.3d 764, 767 (6th Cir.
2015)).

The court finds particularly instructive the case of
Chapman v. JPMorgan Chase Bank, N.A., 651 F. App'x 508 (6th Cir.
2016). In Chapman, plaintiffs facing foreclosure brought a
lawsuit in federal court in 2012, alleging that the defendants,
creditors and related entities, had violated a deed of trust,
violated the Fair Debt Collection Practices Act, and
"illegitimately transferred" the deed of trust. Id. at 509.
After the court granted summary judgment for the defendants, the
plaintiffs filed a second lawsuit in federal court in which they
attempted to rescind the loan that led to the original
foreclosure and alleged that the defendants had violated TILA.
Id. at 509–10. The district court dismissed the case on claim
preclusion grounds, and the Sixth Circuit affirmed. Id. at 510,
513. In holding that res judicata barred the second case, the
Sixth Circuit recognized that, due to how the first suit
"directly attacked the validity of the loan agreement" at issue
in the second suit, there was sufficient "factual and
transactional overlap" to "justif[y] invoking claim preclusion
to bar the [plaintiff's] claims." Id. (citing Sanders

-15-

Confectionery Prod., Inc. v. Heller Fin., Inc., 973 F.2d 474,
484-85 (6th Cir. 1992)).

Similarly, the transaction that formed the basis of the
Chancery Court case is the same as the transaction at issue in
this case: the creation and enforcement of the $540,000 mortgage
loan. (See Nationstar Mortgage, LLC v. Elam, No. 15895 (Tenn.
Ch. Ct. May 8, 2015), ECF No. 14-7 at 2.) Because the prior
suit involved the same transaction or series of transactions at
issue in this suit, Chapman, 651 F. App'x at 511, and because
the Elams could have raised the alleged TILA violations in the
Chancery Court case, the doctrine of res judicata bars further
litigation of these claims.

    3.    Statute of Limitations

The Elams are also time barred from bringing a TILA claim
based on the $540,000 mortgage loan. Parties seeking damages
under TILA must bring their claims within one year of the
consummation of the loan. See Johnson El v. JP Morgan Chase
Bank Nat'l Ass'n, No. 16-2465, 2017 WL 4863167, at *2 (6th Cir.
June 1, 2017)(citing 15 U.S.C. § 1640(e); Coyer v. HSBC Mortg.
Servs., Inc., 701 F.3d 1104, 1109 (6th Cir. 2012)). Parties
seeking rescission under TILA must bring their claims within
"three years after the date of consummation of the transaction .
. . ." Chapman, 651 F. App'x at 512 (quoting 15 U.S.C. §
1635(f)). In their original complaint, the Elams sought damages

of $4,890,044.00 and appeared to seek rescission, asking that the court treat the alleged TILA violations as grounds to "set aside" the loan.  (Compl. 6.)   In their proposed amended complaint, the Elams request that the court remove "all mortgages and liens of Defendants" and also "revert [the $540,000] loan back to the original loan documents reflecting payments of $1,575.00."  (Prop. Am. Compl. 12.)  Regardless of the nature of the relief sought, the Elams consummated the $540,000 loan in 2004, which means that they had to bring their TILA claim for damages by 2005 and for rescission by 2007. Thus, the Elams' TILA claim is time barred.

The Elams argue that their claim has not expired because the court should apply the "expanded statute of limitations" found at 15 U.S.C. § 1640(k)(1).  (PMOMD 3.)   According to § 1640(k)(1), when a "holder of a residential mortgage loan" brings a foreclosure action, "a consumer may assert a violation . . . as a matter of defense or by recoupment or set off without regard for the time limit on a private action for damages under subsection (e)."   To support their argument, the Elams cite Derbabian v. Bank of Am., N.A., 587 F. App'x 949 (6th Cir. 2014).  Derbabian actually undercuts their argument for the application of § 1640(k)(1).  As the Sixth Circuit explained, "[t]he problem with the [plaintiffs'] recoupment and set-off argument is that they are not raising TILA violations 'as a

-17-

matter of defense'; on the contrary, they brought this suit — an affirmative action — seeking damages and other relief." Id. at 955. Because the Elams are bringing an "'offensive' TILA claim[]," they are unable to rely upon the extended time period provided by § 1640(k)(1). Id. (citing Qadeer v. Bank of Am., N.A., No. 12-14310, 2013 WL 424776, at *4 (E.D. Mich. Feb. 4, 2013)).

For the reasons above, the undersigned recommends that as to the TILA claim, the Elams' motion to amend their complaint be denied and Aurora's motion to dismiss be granted.

## C.    Fraudulent Concealment

The Elams claim that Aurora fraudulently concealed the fact that it would require increased mortgage payments in order to "wrongfully obtain title to [the Brierwood property] at a discounted rate." (Prop. Am. Compl. 8.) The court agrees with Aurora that this claim is barred by res judicata, for the same reasons discussed above. Thus, the undersigned recommends that the Elams' motion to amend their complaint with respect to this claim be denied.

## D.    Civil RICO Violation

The Elams accuse Aurora and HSBC of violating RICO by using mail and wire fraud in furtherance of an enterprise to "wrongfully deprive" the Elams of the Brierwood property. (Prop. Am. Compl. 8-9.) The alleged fraudulent behavior to

which the Elams refer is essentially the same as in their TILA
and fraudulent concealment claims. (Id. at 9.) Aurora and HSBC
argue that this claim cannot survive a Fed. R. Civ. P. 12(b)(6)
motion to dismiss because neither the original complaint nor
proposed amended complaint provide sufficient facts to support
its "conclusory allegations," is barred by res judicata, and
falls outside the limitations period for civil RICO claims.
(Aurora's Response 5-7; HSBC Joinder 1.)

     1.   Inadequate Factual Pleadings

     The court finds that the proposed amended complaint
contains insufficient factual allegations to support a civil
RICO cause of action. "To state a claim for a RICO violation, a
plaintiff must allege: '(1) that there were two or more
predicate offenses; (2) that an 'enterprise' existed; (3) that
there was a nexus between the pattern of racketeering activity
and the enterprise; and (4) that an injury to business or
property occurred as a result of the above three factors.'"
Brown v. Burch, Porter & Johnson, PLLC, No. 15-6242, 2016 WL
9448027, at *2 (6th Cir. Nov. 21, 2016) (quoting VanDenBroeck v.
CommonPoint Mortg. Co., 210 F.3d 696, 699 (6th Cir. 2000),
abrogated in part on other grounds by Bridge v. Phoenix Bond &
Indem. Co., 553 U.S. 639 (2008)).

     The Elams allege mail and wire fraud as the requisite
predicate offenses. A civil RICO claim based on allegations of

-19-

fraud must comply with the particularity pleading requirement of
Rule 9 of the Federal Rules of Civil Procedure.  See Brown v.
Cassens Transp. Co., 546 F.3d 347, 356 n.4 (6th Cir. 2008);
Blount Fin. Servs., Inc. v. Walter E. Heller & Co., 819 F.2d
151, 152–53 (6th Cir. 1987); Shields v. HSBC Bank USA, Nat.
Ass'n, No. 13-2955-ST-DKV, 2014 WL 1338897, at *4 (W.D. Tenn.
Mar. 28, 2014).  Rule 9(b) requires that, "[i]n alleging fraud
or mistake, a party must state with particularity the
circumstances constituting fraud or mistake."  Fed. R. Civ. P.
9(b).  "The Plaintiff[] must plead more than a generalized
grievance against a collective group of Defendants in order to
meet the requirements of FRCP 9(b)."  Masterson v. Meade Cnty.
Fiscal Court, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007) (citing
United States ex rel. Bledsoe v. Cmty. Health Sys., Inc., 342
F.3d 634, 643 (6th Cir. 2003)); see also Jiaxi Hu v. Chan, No.
1:15-CV-709, 2016 WL 4269065, at *6 (S.D. Ohio Aug. 15, 2016).

     To comply with Rule 9(b), a complaint alleging a fraudulent
representation "must '(1) specify the statements that the
plaintiff contends were fraudulent, (2) identify the speaker,
(3) state where and when the statements were made, and (4)
explain why the statements were fraudulent.'"  William Beaumont
Hosp. Sys. v. Morgan Stanley & Co., LLC, 677 F. App'x 979, 982
(6th Cir. 2017) (quoting Frank v. Dana Corp., 547 F.3d 564, 570
(6th Cir. 2008)).  A plaintiff must, "[a]t a minimum . . .

allege the time, place and contents of the misrepresentations .
. . ." Id. (quoting Frank, 547 F.3d at 570). "Generalized and
conclusory allegations that the Defendants' conduct was
fraudulent do not satisfy Rule 9(b)." Bovee v. Coopers &
Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001) (citation
omitted). The Elams' proposed amended complaint fails to
provide any details as to the who, what, when, where, or why of
the fraudulent acts that would support a RICO claim. Because
the allegations fail to meet the pleading standard, the proposed
amendment to add a RICO claim would be futile.

    2.  Res Judicata

    The Sixth Circuit's decision in Smith v. Lerner, Sampson &
Rothfuss, L.P.A., 658 F. App'x 268 (6th Cir. 2016), is
instructive as to whether res judicata bars the Elams' civil
RICO claim. In Smith, the plaintiff's home was foreclosed in
state court proceedings. Id. at 270–72. The plaintiff then
sued in federal court alleging, among other claims, that his
creditors had violated RICO, 18 U.S.C. §§ 1961 et seq., by
fraudulently assigning the interest in his mortgage. Id. The
Sixth Circuit found that the plaintiff's claim was "based on the
issue of whether Bank of America held a valid interest in the
mortgage" and, as a result arose "out of the same transaction or
occurrence" as the foreclosure. Id. at 277. Similarly, in this
case, the Elams' RICO claim is based entirely upon the creation

and enforcement of the $540,000 mortgage loan, the same transaction giving rise to the state suit. As in Smith, the doctrine of res judicata bars the Elams from bringing this claim in federal court.

### 3. Limitations Period

The court further finds the Elams are time barred from bringing this RICO claim. The Supreme Court has "established a 4-year limitations period for civil RICO claims" and "starts the clock" upon the "discovery of the injury." Rotella v. Wood, 528 U.S. 549, 552-55 (2000) (citing Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156 (1987)). The Elams do not identify a specific date when the RICO injury occurred. Rather, they describe the injury as an ongoing harm to Frederick Elam's personal and business credit "evidenced by his annual tax returns" and bankruptcy filings. (Prop. Am. Compl. 8-9.) Even viewing these allegations in the light most favorable to the Elams – i.e., that the bankruptcy filing in November 2010 somehow qualifies as a RICO injury – the RICO claim would still fall well outside the four-year limitations period.

For all of these reasons, it is recommended that the Elams' motion to amend their complaint with respect to the RICO claim be denied.

**E.    Foreclosure Attempts**

In their proposed amended complaint, the Elams have, for the most part, abandoned their allegations that the attempted foreclosures were illegal because the Trust never deeded interest in the Brierwood property. To the extent that the proposed amended complaint includes claims that Aurora, FirstBank, or HSBC do not possess an interest in the Brierwood property or lacking standing to foreclose, (Prop. Am. Compl. 10-11), those claims are barred by res judicata for the same reasons discussed above. Thus, the undersigned recommends that the Elams' motion to amend their complaint with respect to these claims be denied and Aurora's and FirstBank's motions to dismiss these claims be granted.

## F.    Claims Against FirstBank

The Elams accuse FirstBank of possessing an illegal judgment and a "moot" mortgage on the Brierwood property. FirstBank contends that the Elams' complaints have fallen short of the pleading requirements because the complaints do not contain a single fact to support a claim against FirstBank. (FirstBank's Joinder at 1.) The following sentence contains the entirety of the factual allegations against FirstBank: "FirstBank has placed an illegal judgement as it was discharged in bankruptcy, and the Chancery Court of Fayette County stated that their mortgage was moot." (Compl. 6; Prop. Am. Compl. 10.) These allegations are "no more than conclusions" and, as such,

-23-

do not make the necessary showing of entitlement to relief. <u>Iqbal</u>, 556 U.S. at 679. Thus, the undersigned recommends that the Elams' motion to amend their complaint with respect to these claims be denied and FirstBank's motion to dismiss be granted.

### III. RECOMMENDATION

For the reasons above, the undersigned recommends that the Elams' motion to amend the complaint be denied, the defendants' motions to dismiss be granted, and the case be dismissed.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

February 1, 2018
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**